FILED

APRIL 22, 2010
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION
_____

| | | |
|---|---|---|
| RAFE PHARRIS, PRO SE, | § | |
| 35773-177, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:07-CV-0098 |
| | § | |
| RANDALL COUNTY SHERIFF ET AL., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION, ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND ORDER OF DISMISSAL**

On this day came for consideration the Motion for Summary Judgment filed March 11,

2010 by the remaining defendants RANDALL COUNTY SHERIFF Joel Richardson and

SECOND SHIFT SUPERVISOR COOK, actually Correctional Officer COOK[1], in the above-

referenced and numbered cause. Plaintiff has wholly failed to respond to defendants' motion for

summary judgment, and the period for response has expired.

On December 16, 2009, the Motion to Dismiss under Rule 12(b)(6) filed by Ronald Lacy,

M.D., responding as defendant COUNTY JAIL DOCTOR, was granted and plaintiff's claims

against defendant COUNTY JAIL DOCTOR were dismissed without prejudice for failure to

state a claim on which relief can be granted.

**CLAIMS**

By his October 17, 2007 amended complaint, plaintiff claims he suffered deliberate

indifference to his serious medical needs while a federal prisoner detained in the Randall County

Jail. He alleges that, before his arrest, he was injured in an accident involving a car and a train.

Plaintiff says he needed a wheelchair, cane, or walker, and was not allowed any of these items.

Further, his medical boot was confiscated. Plaintiff states he was also classified as a low

---

[1] By their April 20, 2010 Amended Answer, defendants clarify that defendant COOK's correct title is Correctional Officer and that he is not and never was a supervisor. Further, defendants clarify that the name of defendant RANDALL COUNTY SHERIFF is Joel Richardson.

security inmate but was housed with the high security prisoners, who were housed the furthest distance from the nurses' station.  Plaintiff also says his cellblock had no handicapped bench or floor mats.

Plaintiff alleges he fell in the shower because he didn't have any of the assistive items he needed, breaking his foot.  He says it took over a week for unidentified personnel to get his foot x-rayed and that, after a month, in late November or early December, he was told he had some broken bones in his foot.  Two weeks later, he says, they placed a medical boot on his foot.

Plaintiff alleges he wrote several letters concerning the "deliberate indifference" he was experiencing to the U.S. Marshal, the County Sheriff, and the nurse, but that it took three months for him to get his proper medicine.  Plaintiff says defendant COOK accused plaintiff of faking his injuries and resulting slow movement.  Plaintiff states defendant COOK also placed plaintiff on a 31 day lockdown for requesting a diabetic sandwich defendant COOK was supposed to give him.

Plaintiff alleges that, after being in jail for about five and a half months, he was finally moved to a medical cell.

Plaintiff requests an award of $100,000.00 from each defendant.

## UNDISPUTED FACTS

Plaintiff, appearing *pro se*, filed this suit while a prisoner in the custody of the United States Medical Center for Federal Prisoners.  At all times relevant to this cause, plaintiff was a federal detainee being held at the Randall County Jail.  Similarly, at all times relevant to this cause, defendant JOEL RICHARDSON was the RANDALL COUNTY SHERIFF and defendant COOK was employed as a correctional officer at the Randall County Jail.  Further, at all times relevant to this cause, defendants were acting within the scope of their employment and under color of state law.

2

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

By their motion defendants argue:  (1) they are entitled to qualified immunity from plaintiff's claims and no evidence in the record overcomes that entitlement or shows that qualified immunity has been waived; (2) the record evidence does not show defendants acted with deliberate indifference to plaintiff's medical needs or that any substantial harm resulted and, in fact, the evidence of record demonstrates they were not deliberately indifferent to plaintiff's serious medical needs; (3) defendants were not personally involved in any alleged deprivation of plaintiff's constitutional rights and there is no causal connection between any act or omission of defendants and any alleged deprivation, and there is no evidence in the record showing otherwise.

## THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(c).  Consequently, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof.  *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Because the consequences of summary judgment are so severe, the court must be careful to avoid premature termination of legitimate lawsuits merely because of unskilled presentations. *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980).  In determining a movant's request for summary judgment, all reasonable inferences must be made in favor of the party opposing the motion.  *Phillip's Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987).  Only disputes of facts that could affect the outcome of

the suit at trial will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Upon such a showing, the burden of production shifts to the nonmovant to delineate specific facts which demonstrate the presence of a genuine issue of material fact. *Id.*; *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992). A motion for judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. If there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then the motion for judgment as a matter of law should be denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

## THE STANDARD OF SUMMARY JUDGMENT REVIEW
## UPON A PLEA OF QUALIFIED IMMUNITY

Since qualified immunity depends on whether the defendant violated a clearly established constitutional right, a preliminary inquiry must be made whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards,

4

analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id.* (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, \_\_\_\_ U.S. \_\_\_\_, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

## EFFECT OF PLAINTIFF'S FAILURE TO RESPOND

The Court cannot grant summary judgment by default because of plaintiff's failure to respond, *Hibernia National Bank v. Administration Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); however, the Court is permitted to accept the defendants' evidence as undisputed and may grant summary judgment to the defendants upon a prima facie showing of entitlement. *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D.Tex.1996); *Tutton v. Garland Indep. Sch. Dist.*, 733 F.Supp. 1113, 1117 (N.D.Tex.1990); *Buckley v. Dallas County*, Civil Action No. 3:97-CV-1649-BC, 2000 WL 502845 (N.D.Tex. April 27, 2000).

Where the movant does not bear the burden of proof at trial, it may meet its summary judgment obligation by pointing out the absence of evidence to support the non-movant's claims. *See, Celotex v. Catrett*, 477 U.S. 317 at 325. Once the movant has met its obligation, the burden shifts to the non-movant to adduce evidence showing a genuine issue of material fact for trial. *Id.* at 324. This burden may be satisfied by designating specific facts on the record and articulating the precise manner in which they support the non-movant's claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Usually, where the nonmovant fails to respond to a motion for summary judgment, he is relegated to his unsworn pleadings, which do not constitute summary judgment evidence. *See, e.g., Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991). However, in the instant case, plaintiff's section 1983 Amended Complaint was signed and declared to be true and

correct under penalty of perjury.  Therefore, it is proper summary judgment evidence.  *Bookman v. Shubzda*, 945 F.Supp. at 1003.

Nevertheless, when a party fails to identify evidence in the record to oppose a motion for summary judgment, that evidence is not properly before the court.  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992).  While the court is not prohibited from considering anything in the record, Rule 56 does not require the Court to excavate the entire record in search of evidence to oppose a summary judgment motion, especially where the non-movant has abdicated his responsibility to respond.  *See Jones v. Sheehan, Young, & Culp, P.C.,* 82 F.3d 1334, 1338 N.3 (5th Cir. 1996); *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988)(it is not necessary "that the entire record in the case must be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered").

"[I]f a plaintiff fails to respond to a properly supported summary judgment motion, [he] cannot meet [his] burden of designating specific facts showing that there is a genuine issue for trial."  *Bookman v. Shubzda*, 945 F.Supp. at 1004.  Therefore, the Court may consider the evidence presented by the moving party to be undisputed.  See *Eversly v. Mbank*, 843 F.2d at 174; *Christian v. Dallas*, 64 F.Supp.2d 617, 623 (N.D.Tex. 1999).

Plaintiff's status as a *pro se* litigant, while it entitles him to a liberal construction of his response, does not excuse him, as the party with the burden of proof, from the requirement that he designate evidence demonstrating an issue of material fact.  *Bookman v. Shubzda*, 945 F.Supp. at 1004-1005 (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d at 1338; *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 455 N.4 (5th Cir. 1995)(cautioning *pro se* litigant that disregard for rules of appellate procedure may result in dismissal), *aff'd on reh'g en banc on other grounds*, 789 F.3d 1415 (1996)), *Christian v. Dallas*, 64 F.Supp.2d at 623; *Buckley v. Dallas County*, Civil Action No. 3:97-CV-1649-BC, 2000 WL 502845 at *4 (N.D.Tex. April 27, 2000).  A *pro se* litigant must follow the same procedural rules governing all litigants.  *Christian v. Dallas*, 64 F.Supp.2d at 623 (citing *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir.

6

1992)(*per curiam*)(*pro se* litigant has no right to notice additional to that provided in Federal Rules of Civil Procedure).

Because of plaintiff's failure to respond, defendants' evidence is accepted as undisputed and summary judgment may issue to defendants upon a prima facie showing of entitlement. *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D.Tex.1996).

### ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff invokes both the Eighth Amendment and Fourteenth Amendment as sources for his protection from deliberate indifference to his serious medical needs. Plaintiff alleges he was a federal detainee in Randall County Jail from October 23, 2006 to May 3, 2007. Court records in *United States v. Rafe Allen Pharris*, cause no. 2:06-CR-0067, show plaintiff pled guilty in federal court on January 10, 2007 and was sentenced on April 3, 2007. Plaintiff was a pretrial detainee during part of the time and he was a convicted prisoner for the remainder of the time relevant to the claims asserted in this cause.

A pretrial detainee's protection flows from the Fourteenth Amendment's Due Process clause and a convicted prisoner must look to the Eighth Amendment's prohibition of Cruel and Unusual Punishment for protection. Nevertheless, there is no significant distinction between pretrial detainees and convicted inmates when the denial of medical care is at issue. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). "[N]egligent medical care does not constitute a valid section 1983 claim." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Instead, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal*

7

*Justice,* 239 F.3d 752, 756 (5th Cir.2001)(quoting *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir.1985)).

Defendants timely asserted the defense of qualified immunity in their November 16, 2009 Answer and reasserted the defense in their Amended Answer.

As evidence, defendants have presented the Affidavits of defendant RANDALL COUNTY SHERIFF JOEL RICHARDSON[2], defendant Correctional Officer William COOK[3], Medical Officer Tim Lacey[4], and a Business Records Affidavit accompanied by 63 pages of medical and other records from the Randall County Jail relating to plaintiff's claims[5].

**Fall in Shower**

Plaintiff's first claim appears to be a condition of confinement claim, that he slipped and fell in the shower, re-breaking his left foot, because the shower was not equipped with a handicapped bench or floormats.  Plaintiff's foot had previously been broken in a train accident and was repaired using a metal plate and screws.  Liability for conditions of confinement attaches only when a prison official's failure to act amounts to subjective deliberate indifference to a pretrial detainee's rights. *Kirabira v. Bureau of Immigration & Customs Enforcement,* 2009

---

[2]By his Affidavit, defendant Sheriff RICHARDSON avers, in relevant part, he was not personally involved in any decision regarding the medial attention and care received by plaintiff during his incarceration in the Randall County Jail but that Randall County has a policy of responding to requests for medical treatment of inmates and also of contacting the medical officers when needed to report inmates' medial conditions and obtain guidance in dealing with such conditions. (Defendants' Appendix p. 2).

[3]Defendant COOK avers in his Affidavit, in relevant part, that he does not now and has not previously had supervisory duties at the Randall County Jail, he was not personally involved in any decision regarding plaintiff's medical care.  Defendant COOK also avers he was not personally involved in any discipline plaintiff received, except to request him to sign a form recognizing that he had been disciplined.  (Defendants' Appendix p. 4).

[4]Medical Officer Tim Lacey's Affidavit states that he is a medical officer for Randall County and performs medical services at the jail pursuant to contract with Randall County.  Medical Officer Lacey avers he has reviewed plaintiff's records from Randall County Jail and has had numerous contacts with plaintiff, evaluating him on several occasions for various medical needs from November 6, 2 006 and throughout his detention in the jail.  (Defendants' Appendix pp. 5-6).
Medical Officer Lacey avers plaintiff submitted numerous medical calls while detained in the Randall County Jail involving various complaints, including complaints about his blankets, chapped lips, sores on his chest and back, canker sores, chest pain, and foot pain, and dandruff.  Medical Officer Lacey states plaintiff received various over-the-counter and prescription medications while in the jail, including Ibuprofen, Azmacort, Quinapril, Singulair, Warfarin, and Aspirin.  He states plaintiff received breathing treatments, EKGs, x-rays, and diagnostic testing.  Medical Officer Lacey also avers plaintiff received a boot/brace for his foot, but did not comply with instructions to avoid putting weight on it, and was given crutches, but failed to comply with instructions to use them.  Lastly, Medical Officer Lacey avers plaintiff's medical needs have always been responded to in a timely manner by medical personnel responding to h is medical request forms, examining him, diagnosing him and ensuring that he received any necessary medication.  (Defendants' Appendix p. 6).

[5]Review of plaintiff's medical records from the jail support Medical Officer Lacey's Affidavit evidence.  (Defendants' Appendix pp. 14-70).

WL 81095, at * 4 (N.D.Tex. Jan. 12, 2009) *(citing Edward v. Johnson,* 209 F.3d 772, 778 (5th Cir.2000); *Hare v. City of Corinth,* 74 F.3d 633, 643, 648 (5th Cir.1996)).

Review of plaintiff's Medical Intake Information sheet reveals that, as of October 23, 2006, when plaintiff was booked into the Randal County Jail, his 2004 train wreck[6] was noted but there was no notation of any special need or treatment except prescribed medications, and plaintiff has not alleged he informed officials he had any special needs. Further, there was no notation that plaintiff was handicapped, and plaintiff has not alleged he was. Plaintiff's subsequent medical records do not show any request for or complaint about not being provided a handicapped shower, handicapped shower bench, or floormats. While plaintiff may feel he should have been provided a shower with a handicapped bench and floormats, there is no evidence of record that the failure to provide these items was the result of deliberate indifference on the part of anyone at the jail, much less defendants RICHARDSON and/or COOK. Further, the evidence does not show the defendants, or anyone else, acted unreasonably in failing to provide a shower bench or floormats for plaintiff and, therefore, defendants are entitled to qualified immunity.

**Treatment for Broken Foot**

Plaintiff complains it took over a week to get his foot x-rayed and a month to tell him he had some broken bones in his foot. Two weeks later, he says, they placed a medical boot on his foot. Plaintiff's allegations appear to be correct.

Plaintiff's medical records show that, on November 11, 2006, he sent a Randall County Jail Medical Call slip asking to see a doctor because he had fallen and re-injured his foot and hip and could not put weight on his foot (Defendants' Appendix p.32). Plaintiff was seen the next day by a nurse or a paramedic who found swelling and discoloration to the outside of plaintiff's left ankle and noting plaintiff's complaint that it felt as if a plate or screw still inside his foot had

---

[6]A medical record dated June 10, 2005 from the Sioux River Valley Community Health Center shows plaintiff was involved in a train accident in October of 2004, injuring his left foot and leaving him in chronic pain (Defendants' Appendix p. 14).

come loose (Defendants' Appendix p.32).  On November 13, 2006, a request was made to the U.S. Marshal's Service to authorize x-rays of plaintiff's foot and chest, and to run a test for TB (Defendants' Appendix p. 33).  The request was authorized on November 14, 2006 (Defendants' Appendix at 33).  Plaintiff was transferred to Northwest Texas Hospital on November 20, 2006 for his chest and foot x-rays (Defendants' Appendix p. 35) and the results of the foot x-ray were released on November 21, 2006 (Defendants' Appendix p. 37).  On December 12, 2006, plaintiff was seen by either Medical Officer Lacey or Dr. Lacy[7] (Defendants' Appendix p. 47), who noted plaintiff's pain and swelling and the x-ray results and diagnosed an unhealed break of the left fibula.  Plaintiff was prescribed crutches and Ibuprofen.

Nothing in the record explains why there was a twenty-one day delay between the release of the x-ray results and the communication of those results to plaintiff with the provision of treatment.  Nevertheless, plaintiff has utterly failed to show this delay was the result of deliberate indifference by anyone, particularly by defendants RICHARDSON and/or COOK.  At best, these facts might support a claim of negligence; however, negligent medical care will not support a claim under section 1983.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  This claim lacks an arguable basis in law and is frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**Assistive Devices**

Plaintiff complains that he needed a wheelchair, cane, or walker, and was not allowed any of these items.  Further, he says, his medical boot was confiscated.  As stated above, plaintiff's medical records show that, on December 12, 2006, he was seen by either Medical Officer Lacey or Dr. Lacy (Defendants' Appendix p. 47), who noted plaintiff's pain and swelling and the x-rays results and diagnosed an unhealed break of the left fibula.  Plaintiff was prescribed crutches and Ibuprofen.  On December 12, 2006, plaintiff complained that he was

---

[7]The physician supervising Medical Officer Tim Lacey is Ronald Lacy, M.D.

10

having a hard time using the crutches because, he said, "they had to put [his shoulder] back together [sic] also."  (Defendant's Appendix p. 48).  Plaintiff was seen by a nurse or paramedic the next day, who noted plaintiff was using one crutch under one arm for support (Defendant's Appendix p. 48).  At some point, plaintiff was provided with a boot/brace and, on December 18, 2006, he complained that the rubber had fallen off the bottom of his boot/brace.  He was seen the next day by Medical Officer Lacey who noted he would "change out boot" and that plaintiff was supposed to be using crutches for non-weight bearing and had not been compliant (Defendant's Appendix p. 49).  These last two entries support Medical Officer Lacey's Affidavit statements that plaintiff was given a boot/brace for his foot but did not comply with instructions not to put weight on it, and was given crutches but failed to comply with instructions to use them (Defendant's Appendix p.6).

The record is devoid of any evidence to support plaintiff's contention of deliberate indifference with respect to the provision and later confiscation of his boot brace.  Instead, these actions are shown to have been the result of the exercise of reasonable medical judgment.

Further, there is no evidence of a request by plaintiff for a  wheelchair, cane, or walker and nothing which supports plaintiff's allegation that he needed any of these items.  Therefore, any failure to provide these items is not shown to have been unreasonable or the result of deliberate indifference.  Critically, the record contains no indication either of the remaining defendants was involved in the challenged decisions.

**Housing Assignment**

Plaintiff's next claim is that he was classified as a low security inmate but was housed with the high security prisoners who were housed the furthest distance from the nurse's station.  Plaintiff does not allege he was harmed by any of the inmates with whom he was housed or even that he was afraid of them and, instead, it appears it was the distance to the nurse's station that was the real source of his dissatisfaction.  Plaintiff's medical records show a December 6, 2006 Medical Call slip requesting to be moved closer to medical because he hurt and didn't want to

walk so far down the hall.  Medical Officer Lacey responded the next day that he would not move plaintiff at that time (Defendants' Appendix at p. 43).  Given that his foot was broken, plaintiff's desire to walk as little as possible is understandable.  Nevertheless, the records before the Court show the break had not been diagnosed at that time, and nothing indicates anyone at the jail knew plaintiff's foot was broken.  Plaintiff was not seen with a diagnosis of fracture until December 12th.  In any event, the record is devoid of any evidence that either defendant RANDALL COUNTY SHERIFF Richardson or defendant COOK were personally involved in the refusal to move plaintiff or that the refusal was in compliance with any policy, custom, or practice promulgated or approved by either of them.

**Medications**

Plaintiff complains that, despite letters complaining of "deliberate indifference" to the U.S. Marshal, the County Sheriff, and the nurse, it took three months for him to get his proper medicine.  Plaintiff does not identify the medicine(s) to which he is referring.  Plaintiff's medical records (Defendants' Appendix pp. 20-26) show that, on his October 2006 intake, plaintiff was being given Ibuprofen, 800 mg., twice a day (Defendants' Appendix p.26).  In November, plaintiff was given Ibuprofen, 800 mg. twice a day; Azmacort once a day; Quinapril 10 mg., once a day; Singulair, 10 mg., once a day; and aspirin, one a day.  Plaintiff's Medical Call slips show he complained on November 25, 2006 that he wasn't being provided his "muscle spasm pill called SAMA" or his "blood thinner called Cubdian."  ((Defendants' Appendix p.40).  The next day, the paramedic or nurse responded that they did not give soma at Randall County but they would check on placing plaintiff on a blood thinner like aspirin.  On November 27, 2006, Medical Officer Lacey ordered plaintiff be given a daily aspirin (Defendants' Appendix p.40).

Plaintiff's medications for December of 2006 consisted of Ibuprofen, 800 mg., twice a day; Azmacort, once a day; Singulair, 10 mg., once a day; and Quinapril, 1mg., once a day. Plaintiff's daily aspirin was discontinued and he was placed on Warfarin, 5 mg., once a day. (Defendants' Appendix p.24).  Plaintiff's Clinic Notes show on December 12, 2006, a note that

12

plaintiff stated he "was on Coumadin[8] in [the free] world just now telling anyone" (Defendants' Appendix p.47).  Plaintiff's aspirin was discontinued that day and he was placed on Warfarin (Defendants' Appendix p.47).  Review of the records for the succeeding months reveals plaintiff's prescriptions remained constant after that, except that his dosages of Warfarin were adjusted (Defendants' Appendix pp. 20-23).

The record, as reviewed above, reveals plaintiff was given his medications as soon as it was determined he needed them.  If plaintiff is referring to the delay in giving him his Coumadin/Warfarin, nothing in the record indicates anyone at Randall County Jail knew he had been taking that drug until he told them in December; and then it was prescribed for him that very day.  The record before the Court rebuts any claim by plaintiff in this regard and shows jail personnel acted responsively and reasonably to plaintiff's needs.  Also, no causal connection between the alleged wrong and either of the remaining defendants is shown.

The record does not show that either of the defendants was personally involved in the challenged acts, omissions, and decisions analyzed above or that or that such acts, omissions, and decisions were in compliance with a policy, practice or custom promulgated or approved by either defendant.  Nothing in the record before the Court shows either defendant RANDALL COUNTY SHERIFF Richardson or defendant COOK was deliberately indifferent to plaintiff's medical needs or acted unreasonably.

To the extent any of plaintiff's claims rely upon the supervisory position of defendant RANDALL COUNTY SHERIFF Richardson, the acts of subordinates trigger no individual section 1983 liability for supervisory officers.  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314(5th Cir. 1999).

---

[8]The Court notes Warfarin is the generic name and Coumadin is the brand name for the same drug.

**Defendant COOK**

Plaintiff specifically complains defendant COOK accused plaintiff of faking his injuries and need to move slowly.  It is clearly established that mere allegations of verbal abuse do not present an actionable section 1983 claim.  *Bender v. Brumley*, 1 F.3d 271, 274 (5th Cir. 1993). Even threatening language and gestures of a custodial officer do not amount to a constitutional violation.  *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.); *cert. denied*, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983)(quoting *Coyle v. Hughs*, 436 F.Supp. 591, 593 (W.D.Okla. 1977)).  The remarks plaintiff attributes to defendant COOK will not support a claim of violation of plaintiff's constitutional rights.

Lastly, plaintiff claims defendant COOK placed plaintiff on a 31 day lockdown for requesting a diabetic sandwich which defendant COOK was supposed to give plaintiff. Plaintiff's medical records show plaintiff's insulin levels were checked October 25, 28, 29, 330, and 31, and November 1, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 20th (Defendants' Appendix pp. 27-28).  Plaintiff was never found to need insulin and was never given any.  Plaintiff's jail records also reveal he received a disciplinary case on December 10, 2006 for trying to obtain a diabetic snack when he was not supposed to get one.  The Inmate Incident History notes that plaintiff was having his blood sugar tested on an as-needed basis and he had found that, if he asked for a snack, he was able to get one from officers who were unaware of whether he was supposed to get one or not.  The charging officer, Sgt. Courts, stated he called medical and made sure plaintiff was not supposed to get a snack and informed plaintiff that he did not get a diabetic snack at night.  The next time the officer worked in that pod, plaintiff again requested a snack and the officer called medical again to double check that plaintiff does not receive a snack. Sergeant Courts then asked other officers if plaintiff had been requesting and receiving a snack and they said he had.  Sergeant Courts then spoke with plaintiff and informed him he was not getting a diabetic snack and if he heard plaintiff asking another one of his officers, plaintiff would receive a case.  Plaintiff requested another snack on December 9, 2006 from an Officer

14

Nicholson, who left a note for Sgt. Courts; and Sgt. Courts wrote plaintiff a disciplinary case for not obeying his order to cease requesting diabetic snacks (Defendants' Appendix p. 12).  At the disciplinary determination, the disciplinary officer inquired with Nurse Lynn whether plaintiff was to get a diabetic snack and she stated "no and that he never was."  Plaintiff received 30 days in lockdown for this incident (Defendants' Appendix p. 13).

Plaintiff's records analyzed above clearly demonstrate plaintiff was not supposed to receive a diabetic snack and was disobeying an order from the staff when he continued to request such snacks.  Whatever involvement defendant COOK had in the matter, the record before the Court shows no deliberate indifference to plaintiff's serious medical needs and demonstrates the officers involved acted reasonably and are entitled to qualified immunity.

Defendants' evidence on these points is undisputed and they have made a prima facie showing of entitlement to summary judgment on the merits.  *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D.Tex.1996).

Even assuming, *arguendo*, that a prima facie showing of entitlement is not sufficient even in light of plaintiff's failure to respond, the Court finds that, after considering plaintiff's verified complaint as evidence, the defendants have shown there is no material issue of fact which prevents summary judgment and that they are entitled to judgment on qualified immunity and on the merits.

## CONCLUSION

Drawing all reasonable inferences in favor of the nonmoving party, the Court finds defendants have submitted competent summary judgment evidence and arguments entitling them to summary judgment both on the merits and on the issue of qualified immunity; and plaintiff has failed to satisfy his burden in order to defeat the motion.

There is no material issue of disputed fact which precludes entry of summary judgment for defendants, and defendants are entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(c).

It is HEREBY ORDERED that defendants' motion for summary judgment is GRANTED and plaintiff RAFE PHARRIS' claims against the defendants RANDALL COUNTY SHERIFF Joel Richardson and SECOND SHIFT SUPERVISOR COOK, actually Correctional Officer COOK, are DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

The United States District Clerk shall mail a copy of this Report and Recommendation to plaintiff and to each attorney of record by first class mail.

It is SO ORDERED.

Signed this the 22nd day of April, 2010.


/s/ Mary Lou Robinson
MARY LOU ROBINSON
United States District Judge

16